UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALFONSO RIZZUTO,

                               Plaintiff,

   v.                                                     9:23-CV-1158
                                                          (LEK/MJK)

PHIL MELECIO, et al.,

                               Defendants.
_____

ALFONSO RIZZUTO, Plaintiff, pro se
OLIVIA R. COX, Asst. Att'y General, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE LAWRENCE E. KAHN, SENIOR U.S. DISTRICT JUDGE:

## ORDER AND REPORT-RECOMMENDATION

Presently before the court is a motion to dismiss the complaint brought by defendants Morley, Melecio, Klepsis, Gleblocki, and Brugger for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 19).  Plaintiff responded in opposition to the motion.  (Dkt. No. 28).  This motion has been referred to me for Report and Recommendation by Senior United States District Judge Lawrence E. Kahn.  For the following reasons, this court recommends denying defendants' motion.

**I.**    **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face."

1

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp.*, 550 U.S. at 555). When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (per curiam).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court's consideration is limited to the factual allegations as stated in the complaint, documents attached to the complaint as exhibits or incorporated into the complaint by reference, and matters of which the court can take judicial notice. *Portillo v. Webb*, No. 16 Civ. 4731, 2017 WL 4570374, at *1 (S.D.N.Y. Oct. 11, 2017) (quoting *Brass v. Am. Film Tech.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)).  A court may take judicial notice of a public record pursuant to Fed. R. Evid. 201(b). *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

II.   **Factual Contentions**

Pursuant to Judge Kahn's initial review of the complaint under 28 U.S.C. § 1915A, the following of plaintiff's claims remain:

> 1) Eighth Amendment medical indifference claims against defendants Gettler and Morley;
>
> 2) Eighth Amendment conditions-of-confinement claims against defendants Melecio, Klepsis, and Gleback; and
>
> 3) First Amendment retaliation claims against defendants Gettler, Melecio, and Brugger.

(Dkt. No. 3 at 20).  The following summary of plaintiff's allegations, as stated in the complaint, are taken from Judge Kahn's December 4, 2023 order on initial review (Dkt. No. 3 at 2-4), and are restated herein to the extent they are relevant to plaintiff's surviving claims and the pending motion to dismiss.  Plaintiff's claims flow from alleged wrongdoing that occurred while he was incarcerated at Wallkill Correctional Facility ("Wallkill C.F.").

A.   **Medical Issues**

"Plaintiff suffers from an acute form of psoriasis that requires daily and thorough care of his entire body, including treatments involving alcohol pads and other salves, as well as the avoidance of environmental irritants." (Compl. at 6). "This condition was well-documented and diagnosed throughout Plaintiff's incarceration." (*Id.*).  On April 1,

2021, plaintiff was transferred to Wallkill C.F. (*Id.* at 7). While incarcerated there, plaintiff received primary care from non-moving defendant Dr. Gettler. (*See id.*). Dr. Gettler "ignored nearly all of Plaintiff's treatment plan mandated by an outside specialist's . . . orders" through the duration of his incarceration. (*Id.*). Dr. Gettler did so despite plaintiff's complaints that he was experiencing "constant agony and pain." (*Id.*). Among other things, Dr. Gettler "withheld, denied and limited salves that were/are absolutely necessary to the treatment of plaintiff's psoriatic condition," which "would have alleviated Plaintiff's pain and suffering and generally . . . ameliorated his condition." (*Id.*). Dr. Gettler also "failed to note all medical treatments or requests for treatment" in plaintiff's medical records, and "failed and refused to take . . . Plaintiff's blood pressure" despite plaintiff having a "history of high blood pressure and increasingly serious cardiac issues." (*Id.*). In addition, Dr. Gettler "often ignored" plaintiff's requests to be seen at "sick-call." (*Id.*). Plaintiff filed nearly thirty grievances regarding Dr. Gettler. (*See id.*).

Because of "the substandard medical care" Plaintiff received from Dr. Gettler, he sent "numerous written complaints" to defendant John J. Morley, M.D., the "Deputy Commissioner of DOCCS in charge of the medical care of inmates." (Compl. at 6, 7-8). Dr. Morley "failed to conduct any investigation" into plaintiff's complaints, and instead

4

"issued summarily dismissive responses in the few times he deigned to respond." (*Id*. at 8).

    **B.**    **Air Quality Issues**

During plaintiff's confinement at Wallkill C.F., he was housed in a cell with "little to no working ventilation" and where DOCCS' "indoor 'no smoking' policy was not enforced." (Compl. at 8). Approximately eighty inmates populated plaintiff's cell area, and "the vast majority" of them smoked tobacco in violation of the "no smoking" policy. (*Id.*).

At some point, plaintiff "had an adverse reaction to the second-hand smoke in his [cell]," which "caused him great pain and suffering." (*Id.*). The secondhand smoke exposure also "exacerbated [plaintiff's] psoriasis . . . affected his breathing and caused a fear" that "his existing coronary condition" would worsen, or he would develop cancer. (*Id.*). Plaintiff "lodged numerous written complaints . . . to medical" and to defendant Phil Melecio, the Superintendent of Wallkill C.F., and defendant Charles Klepsis, the "Plant Superintendent" of Wallkill C.F., regarding "the ventilation issue[,] and filed numerous grievances in an attempt to have the ventilation fixed," or obtain "a transfer to a non-smoking unit or to another correctional facility." (*Id.*). In plaintiff's complaints to Superintendent Melecio, he "requested, among other things, cleaning of and repairs

5

to the ventilation system in [his] unit and enforcement of the DOCCS no-smoking policy." (*Id.*).

Plaintiff describes multiple deficiencies in the ventilation system, including "non-working exhaust fans and cooling fans, broken smoke heads, windows that could not be opened, [and] soot-filled and dust-encrusted screens, ducts and vents." (*Id.*).

Despite plaintiff's complaints, "no investigation" was undertaken. (*Id.* at 8-9). Instead, plaintiff received written correspondence advising only that "DOCCS [has] a no-smoking policy in place." (*Id.* at 9).

On August 23, 2021, and other unidentified dates, plaintiff submitted written requests to defendant T. Gleback, the Deputy Superintendent of Programs at Wallkill C.F., seeking "a reasonable accommodation under the ADA" in the form of a "transfer to another facility because of the on-going second-hand smoking problem" that was "exacerbat[ing] his psoriatic condition." (*Id.* at 9). Plaintiff also requested "weather stripping in order to keep the smoke out of his cell and . . . an air purification system." (*Id.*). Gleback "ignored" plaintiff's requests. (*See id.*).

    C.    **Inmate Assault and False Misbehavior Report**

On June 16, 2021, an inmate-employee assaulted plaintiff in the law library. (*See* Compl. at 10). Plaintiff submitted "numerous" letters to defendants Superintendent Melecio and Vincent Brugger, the Deputy Superintendent of Administration at Wallkill

6

C.F., regarding the incident and multiple grievances: the inmate-employee was "not disciplined or referred for criminal charges." (*Id.*). Instead, Melecio and Brugger "caused Plaintiff to be setup for a disciplinary ticket wherein [he] was falsely accused of being out of place," which resulted in "a loss of recreation penalty." (*Id.*). Plaintiff appealed the disciplinary determination to Melecio, who "totally failed to entertain [the] appeal" or "investigate the false accusation." (*Id.*).

## DISCUSSION[1]

### III. <u>Eighth Amendment Medical Indifference Claim – Defendant Morley</u>

Defendants argue that plaintiff's Eight Amendment medical indifference claim against defendant Morley should be dismissed, because there are no allegations which plausibly suggest that Morley knew or had any reason to know of plaintiff's medical care at Wallkill C.F. (Defendants' Memorandum of Law ("Def.'s MOL") at 5) (Dkt. No. 19-2). The defendants' argument is belied by the plain allegations contained in the complaint, stating that Morley, the administrator and physician who handled medical grievances at Wallkill C.F., responded to plaintiff's multiple grievances concerning the

---

[1] In his December 2023 decision and order on initial review, Judge Kahn recited the relevant legal standards governing the pleading requirements for plaintiff to state a cause of action under the First and Eighth Amendment. (*See* Dkt. No. 3 at 8-20). The court relies on Judge Kahn's cogent recitation of the law, which for purposes of judicial efficiency will not be restated herein, in assessing the defendants' pending motion to dismiss.

7

deficient medical care he was receiving, but did not intervene in the alleged indifference to plaintiff's worsening psoriasis. (Compl. at 7-8). "Courts have found personal involvement where a supervisor receives and acts on an inmate's grievance or otherwise reviews and responds to an inmate's complaint." *Russin v. Vermont,* No. 2:19-CV-105, 2020 WL 2537458, at *2 (D. Vt. May 19, 2020) (listing cases); *see also Carter v. Akinyombo,* No. 21-CV-00872, 2022 WL 2307679, at *6 (S.D.N.Y. June 27, 2022) (plaintiff sufficiently alleged personal involvement where defendant responded to plaintiff's grievances and discussed further action to be taken with respect to plaintiff's medical care, because the defendant's involvement "clearly extended beyond the mere receipt of letters.") (cleaned up)). At the pleading stage, plaintiff has plausibly alleged personal involvement by defendant Morley sufficient to survive a motion to dismiss.

IV. **Eighth Amendment Conditions of Confinement Claim – Defendants Melecio, Klepsis and Glebock**

Defendants next contend that plaintiff's Eighth Amendment conditions of confinement claim should be dismissed because (1) plaintiff failed to allege the personal involvement of defendants Melecio, Klepsis, and Glebocki in subjecting plaintiff to the alleged conditions, and (2) plaintiff has otherwise failed to plausibly allege the elements of such a claim. (Def.'s MOL at 6-8, 9-13). With respect to personal involvement, plaintiff alleges that he "lodged numerous written complaints" to the "Facility

8

Superintendent," defendant Melecio, as well as the "Plant Superintendent," defendant Klepsis, over "the ventilation issue" and "enforcement of the DOCCS no-smoking policy." (Compl. at 8). Plaintiff further alleges that he identified a myriad of specific deficiencies in the ventilation system to these defendants. (*Id.*). Plaintiff states that these defendants only responded "in boilerplate fashion that DOCCS had a no-smoking policy in place." (*Id.*). Liberally construed, plaintiff's complaint alleges that defendants Melecio and Klepsis were involved with and/or had some extent of responsibility for the ventilation system at Wallkill C.F., and nevertheless knew of and disregarded the air quality in plaintiff's cell.

Plaintiff further alleges that he filed "numerous" requests with the Deputy Superintendent of Programs at Wallkill C.F., defendant Gleback, "for reasonable accommodation[ ] . . . [and] for transfer to another facility because of the on-going second-hand smoke problem that . . . exacerbated his psoriatic condition[.]" (Compl. at 9). Among plaintiff's requests was to "receive weather stripping in order to keep the smoke out of his cell and for an air purification system so that the air in his cell would be filtered." (*Id.*). Plaintiff alleges that plaintiff's requests were ignored by defendant Gleback "and caused plaintiff to be without a remedy to appeal to others." (*Id.*). At this early pleading stage, plaintiff's allegations sufficiently plead defendant Gleback's personal involvement.

9

Moreover, plaintiff's Eighth Amendment conditions of confinement claim is not subject to dismissal at this juncture for failure to adequately plead the objective and subjective components of such a claim. Excessive exposure to second-hand smoke can be a serious condition that provides the basis for an Eighth Amendment claim. *See Helling v. McKinney*, 509 U.S. 25, 35-36 (1993); *Colon v. Sawyer*, No. 03-CV-1018, 2006 WL 721763, at *8 (N.D.N.Y. Mar. 20, 2006) (denying motion for summary judgment seeking dismissal of plaintiff's Eighth Amendment claims alleging excessive exposure to smoke). Here plaintiff has alleged that "the vast majority of" the approximately 80 inmates in his housing unit smoked tobacco in the unit. (Compl. at 4). To the extent plaintiff alleges that he complained to officials about the ongoing effects of the second-hand smoke on his health for at least nine months, without relief, the court is not inclined to recommend dismissing plaintiff's claim for failure to plead the objective component of an Eighth Amendment claim.

With respect to the subjective component, defendants' argument that "there are no allegations that any of the defendants were aware, or had some particular reason to be aware," of the smoking and ventilation issues raised by plaintiff is unavailing. Plaintiff alleges to have had ongoing correspondences with defendants Melecio and Klepsis, and to have made multiple requests to Gleback, concerning these issues. (Compl. at 8). Liberally construed, plaintiff has alleged that these defendants knew of and disregarded

10

the air quality in his cell, and thus alleged sufficient facts to overcome defendants' motion to dismiss.

## V. **First Amendment Retaliation Claim – Defendants Melecio and Brugger**

Last, defendant argues that plaintiff's First Amendment retaliation claims against defendants Melecio and Brugger should be dismissed because plaintiff failed to allege (1) the personal involvement of Melecio and Brugger in any retaliatory conduct, (2) any actionable, adverse action by these defendants against the plaintiff, and (3) that there was a causal connection between plaintiff's protected speech, i.e. the filing of grievances, and any adverse action. (Def.'s MOL at 8-9, 13-16).

Defendants' motion suggests that plaintiff's claim of retaliation is premised solely on the "failure of supervisory officials . . . to respond to a complaint or grievance[.]" (Def.'s MOL at 8). But this is too narrow a reading of the complaint. Liberally construed, the complaint alleges that defendants Melecio and Brugger were involved in the filing of a false disciplinary ticket after plaintiff filed grievances against them for failing to discipline another inmate for assaulting plaintiff, and also failing to investigate the incident. (Compl. at 6). As defendants recognize, courts have held that the filing of a misbehavior report is an adverse action. *See Mateo v. Gundrum,* No. 9:10-CV-1103 (GLS/GHL), 2011 WL 5325790, at *6 (N.D.N.Y. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 5325794 (N.D.N.Y. Nov. 3, 2011) (citing *Gill*

11

*v. Pidlypchak,* 389 F.3d 379, 380–81 (2d Cir.2004)). Although the discovery process may reveal that the consequences of plaintiff's misbehavior report were so *de minimus* as to not constitute adverse action,[2] or other facts rendering plaintiff's retaliation claim unactionable, plaintiff's allegations are sufficient to withstand defendants' motion to dismiss for failure to state a claim.

**WHEREFORE**, based on the above, it is

**RECOMMENDED,** that defendants' motion to dismiss (Dkt. No. 19) be **DENIED** in all respects, and it is further

**ORDERED** that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary*

---

[2] Defendants cite to various cases for the proposition that "a temporary loss of privileges does not constitute adverse action." (*See* Def.'s MOL at 14-15). The court notes that these cases are all decisions rendered at the summary judgment stage, with benefit of discovery, as opposed to conclusions drawn at the pleading stage.

12

*of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 17, 2024

Mitchell J. Katz
U.S. Magistrate Judge